UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MARK JOHNS,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST NATIONAL BANK IN SIOUX FALLS,<br><br>Defendant. | 4:22-cv-4136<br><br>**COMPLAINT**<br>With Jury Trial Demanded |

Plaintiff Mark Johns brings this action for reprisal discrimination in employment under Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, as amended, at 42 U.S.C. § 12101 *et seq.* ("the ADA"), and the Age Discrimination in Employment Act of 1967, as amended, at 29 U.S.C. 621 *et seq.* ("the ADEA"), and states the following claims against the Defendant:

## THE PARTIES, JURISDICTION AND VENUE

1. Mark Johns ("Johns") is an adult resident born in 1977 of Minnehaha County, South Dakota.

2. First National Bank in Sioux Falls ("First National") is a nationally chartered, independently owned bank with its principal offices and banking facilities located in Sioux Falls, South Dakota.

3. First National is an "employer" within the meaning of 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b) and 42 U.S.C. § 12111(5)(A).

4. During the time relevant to the allegations of this Complaint, Johns was an "employee" within the meaning of 42 U.S.C. § 2000e(f), 29 U.S.C. § 631(a), (f), and 42 U.S.C. §

1

12111(4).

5. As an employment retaliation claim brought under Title VII, the ADEA and the ADA, and this Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated in it pursuant to 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred within the Southern Division of the District of South Dakota.

7. Following his termination from employment on October 22, 2021, Johns timely filed a Charge of Discrimination with the EEOC alleging retaliation for opposing and participating in a complaint of sex discrimination, race discrimination, age discrimination and disability discrimination as violations of Title VII, the ADEA, and the ADA.

8. Johns exhausted his administrative remedies and received a Determination and Notice of Rights from the EEOC dated July 13, 2022.

## FACTUAL ALLEGATIONS

9. First National employed Johns between 2006 and October 22, 2021.

10. During his employment, First National rated Johns' performance as outstanding on his performance evaluations and rewarded his performance with promotions.

11. During his employment, First National did not subject Johns to disciplinary actions, verbal warnings, or a plan of assistance to improve his performance.

12. At the time of his termination, John's job was a Network Administrator II in First National's Information Systems/Information Technology department. His job duties

included developing strategies for implementing changes to First National's network systems, telephone systems, network servers and surveillance systems, and to help users with technical issues with First National's systems and applications. His job duties included a responsibility to assist in maintaining First National's telecommunication systems and security apparatus.

13. In approximately September 2020, Johns witnessed a male First National supervisor ("Supervisor 1") comment about a female First National employee who is a person of color: "I wish I could go back in time and buy her family."

14. In late 2020 or early 2021, when Johns asked Supervisor 1 for approval to share work related information with a female intern at First National, Supervisor 1 replied: "You can do whatever you want: she's over 18." Johns interpreted this comment as an inappropriate remark related to sex.

15. Between the fall of 2019 and August 2021, Johns became aware that Supervisor 1 made discriminatory comments about the age, sex, and medical condition of a different female employee ("Employee A") that Supervisor 1 supervised.

16. Johns reasonably believed that Employee A is in statutorily protected categories because of her age, sex, and disability.

17. Johns observed that Supervisor 1 granted similarly situated male employees with better treatment in the terms and conditions of their employment than Employee A.

18. Johns reasonably believed that Supervisor 1's poor treatment of Employee A was based upon discriminatory animus because of her age, sex and his negative perceptions about her disability and accommodation requests in violation of First National's discrimination policies and in violation of federal discrimination laws.

19. Though it is not an exhaustive list, Johns was aware of the following incidents that he believed were evidence of discriminatory animus in the First National workplace:

   a. In approximately December 2019, Supervisor 1 related Employee A's job performance to the fact that Employee A was in her 50's.

   b. In approximately May 2020, Supervisor 1 wondered if Employee A could be "fixed" at her age, and that expressed that old people were a "pain in the ass."

   c. In approximately May 2020, Supervisor 1 expressed that he hoped that if he placed Employee A on a corrective action, she would get angry and quit.

   d. In approximately May 2020, Supervisor 1 states that he preferred to have a similarly situated male employee assigned to a project because Employee A made him uncomfortable.

   e. Between approximately May through August 2020, when Employee A requested time to meet with Supervisor 1, Supervisor 1 would not meet with her but would make time for similarly situated male employees, and Supervisor 1 expressed that he wished Employee A would quit.

   f. In approximately June 2020, Supervisor 1 made derisive comments about Employee A's disability-related accommodation requests for a stand-up desk and noise cancelling headphones.

   g. In approximately July 2020, Supervisor 1 complained when Employee A took approved time off for health issues, and expressed that she just needed to "toughen up."

   h. In approximately July 2020, Supervisor 1 criticized Employee A by telling her that he was surprised that as someone over age 50, she did not have more maturity and self-awareness.

   i. In the Fall of 2020, Supervisor 1 told Employee A that when someone mentioned that Employee A looked different, Supervisor 1 had responded by saying that Employee A looked different because she is "old."

   j. In approximately March 2021, Supervisor 1 caused Employee A to be placed on a plan of assistance while he granted a similarly situated male employee an easier, shorter plan of assistance.

   k. In approximately July 2021, Supervisor 1 told other employees that Employee A had been struggling with mental health issues because of his corrective

4

> action against her. Supervisor 1 then extended Employee A's corrective action by three additional months even though he admitted that she had met its objectives.

20. To best of Johns' knowledge and belief, at least some of Supervisor 1's discriminatory comments and conduct as described in Paragraph 19 were witnessed by other supervisory employees of First National, including a member of its Human Resources department.

21. Between 2019 and 2021, Johns complained about Supervisor 1's discriminatory comments and conduct to Johns' direct supervisor.

22. Johns' direct supervisor responded that he did not want to know about Johns' complaints and declined to follow up or investigate them.

23. To the best of John's knowledge and belief, First National did not institute any investigations into reports of Supervisor 1's discriminatory, harassing treatment directed at Employee A or other employees until on or about October 4, 2021.

24. On or about October 4, 2021, Employee A formally complained to First National that Supervisor 1 had subjected her to age, sex, and disability discrimination.

25. In the process of making her discrimination report, Employee A asked Johns if he was willing to be a witness about his knowledge of Supervisor 1's discriminatory comments and conduct. Johns told Employee A that he would provide truthful information and testimony about discriminatory conduct that he was aware of in their work environment.

26. On or about October 6, 2021, Employee A met with an outside attorney ("the Investigator") who First National had hired to investigate Employee A's discrimination complaints, and Employee A named Johns as a witness who would support her discrimination complaints.

27. On or about October 8, 2021, First National initiated an investigation into Johns' conduct to determine whether Johns was helping Employee A to document or to pursue her discrimination complaints.

28. On or about October 18, 2021, the Investigator interviewed Johns about Employee A's discrimination complaints. Johns told the Investigator about the incidents he was aware of about Supervisor 1's discriminatory treatment of Employee A, as well the other instances where he had witnessed Supervisor 1 making racist or sexual comments about other female employees.

29. During his interview, Johns told the Investigator that Johns had complained to his direct supervisor about Supervisor 1's discriminatory conduct and comments.

30. On or about October 20, 2021, First National advised Employee A that it had completed its investigation, had found no evidence of discrimination, and it was closing its investigation.

31. To the best of Johns' knowledge and belief, Employee A decided to leave her employment at First National because of its refusal to address her discrimination complaints.

32. On October 22, 2021, Johns was called into a meeting with Jenn Reecy, who was First National's Chief Employee Experience Officer and First National's point of contact with the Investigator. Reecy announced that Johns was terminated. When Johns asked why he was being terminated, Reecy responded: "You know what you did." When Johns stated that he did not know, Reecy was unable or unwilling to provide him with a reason for his termination.

## **COUNT ONE**

### **Retaliatory Discrimination for Opposing Discrimination under Title VII, the ADA, and the ADEA**

33. The Plaintiff incorporates the foregoing paragraphs by reference.

34. Title VII, at 42 U.S.C. § 2000e-3(a), provides that it is an unlawful employment practice for an "employer to discriminate against any of his employees or applicants for

6

employment" or "to discriminate against any individual because he has opposed any practice made an unlawful employment practice by this subchapter...."

35. The ADA, at 29 U.S.C. § 623(d), provides: "It shall be unlawful for an employer to discriminate against any of his employees...because such individual... has opposed any practice made unlawful by this section...."

36. The ADEA, at 42 U.S.C. § 12203(a), provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter...."

37. The Plaintiff reasonably believed that Employee A and other female employees were being subjected to discrimination by a supervisor based upon their sex, race, age, and disability status.

38. The Plaintiff opposed the discriminatory employment practices that he observed and was aware of in his work environment by reporting it to his supervisor and to an investigative agent hired by the Defendant.

39. The Defendant terminated the Plaintiff within three weeks after the Plaintiff opposed discrimination by agreeing to be a witness in support of a co-worker's discrimination complaint regarding conduct that he believed to be unlawful under Title VII, the ADEA and the ADA.

40. The Defendant terminated the Plaintiff within three days after the Plaintiff opposed discrimination by reporting discriminatory conduct to an investigative agent of the Defendant regarding conduct that he believed to be unlawful under Title VII, the ADEA and the ADA.

41. The Defendant would not have terminated the Plaintiff but for the Plaintiff's opposition to discriminatory conduct in its workplace.

42. The Defendant's actions in terminating the Plaintiff might well dissuade a reasonable worker in the same or similar circumstances from opposing discriminatory conduct in its workplace.

43. The Plaintiff was subject to retaliation in violation of 42 U.S.C. § 2000e-3.

44. The Plaintiff was subject to retaliation in violation of 29 U.S.C. § 623(d).

45. The Plaintiff was subject to retaliation in violation of 42 U.S.C. § 12203(a).

46. As a direct and proximate result of the Defendant's unlawful conduct, the Plaintiff has suffered loss of past and future income and employee benefits, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages.

47. The Defendant's conduct and decisions described above were made with malice, or reckless or deliberate disregard for the Plaintiff's legal rights.

## COUNT TWO

### Retaliatory Discrimination for Assisting and Participating in a Discrimination Investigation
### Under Title VII, the ADA, and the ADEA

48. The Plaintiff incorporates the foregoing paragraphs by reference.

49. Title VII, at 42 U.S.C. § 2000e-3(a), provides in part that it is an unlawful employment practice for an "employer to against any individual … because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

50. The ADA, at 29 U.S.C. § 623(d), provides in relevant part as follows: "It shall be unlawful for an employer to discriminate against any of his employees… because such individual… has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

51. The ADEA, at 42 U.S.C. § 12203(a) provides: "No person shall discriminate against any individual because such individual … made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

52. The Plaintiff reasonably believed that Employee A and other female employees were

being subjected to discrimination by a supervisor based upon their sex, race, age, and disability status.

53. The Plaintiff assisted and participated in a co-worker's discrimination complaint by agreeing to be a witness in support of the co-worker's discrimination report to the Defendant.

54. The Plaintiff assisted and participated in a co-worker's discrimination complaint by giving a statement in support of the co-worker's discrimination report and by reporting other instances of discriminatory conduct to an investigative agent hired by the Defendant to investigate his co-worker's complaint of discrimination.

55. The Defendant terminated the Plaintiff within three weeks after the Plaintiff assisted and participated in a discrimination investigation by agreeing to be a witness in support of a complaint of discrimination regarding conduct that he believed violated Title VII, the ADEA, and the ADA.

56. The Defendant terminated the Plaintiff within three days after the Plaintiff assisted and participated in a discrimination investigation by giving a witness statement in a discrimination complaint investigation regarding conduct that he believed violated Title VII, the ADEA and the ADA.

57. The Defendant would not have terminated the Plaintiff but for the Plaintiff's assistance and participation as a witness in support of his co-worker's discrimination complaint.

58. The Defendant's actions in terminating the Plaintiff might well dissuade a reasonable worker in the same or similar circumstances from making or supporting a charge of discrimination.

59. The Plaintiff was subject to retaliation in violation of 42 U.S.C. § 2000e-3.

60. The Plaintiff was subject to retaliation in violation of 29 U.S.C. § 623(d).

61. The Plaintiff was subject to retaliation in violation of 42 U.S.C. § 12203(a).

62. As a direct and proximate result of the Defendant's unlawful conduct, the Plaintiff has

suffered loss of past and future income and employee benefits, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages.

63. The Defendant's conduct and decisions described above were made with malice, or reckless or deliberate disregard for the Plaintiff's legal rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mark Johns prays for judgment against Defendant First National Bank of Sioux Falls as follows:

A. That the practices of Defendant complained of in this Complaint be determined to violate the rights secured to the Plaintiff under Title VII, the ADEA, and the ADA;

B. For all relief available to the Plaintiff, including compensatory relief and damages arising from loss of past and future income, benefits, emotional distress, and other damages, with interest on such amounts;

C. For the Plaintiffs attorneys' fees, costs and disbursements incurred;

D. For a jury trial on all issues; and

E. For such further and other relief as the Court deems just and equitable.

Dated this 7th day of October, 2022.

JOHNSON POCHOP & BARTLING LAW OFFICE, LLP

Stephanie E. Pochop
405 Main St. | P.O. Box 149 Gregory, SD 57533
(605) 835-8391
Stephanie@Rosebudlawyers.com

&

Gavin D. Pochop
4201 S. Minnesota Ave., Suite 113
Sioux Falls, SD 57105
(605) 835-3891
Gavin@Rosebudlawyers.com
*Attorneys for Plaintiff Mark Johns*

10

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Mark Johns

**(b)** County of Residence of First Listed Plaintiff: Minnehaha County, SD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Stephanie E. Pochop | Johnson Pochop & Bartling
405 Main Street |PO Box 149 Gregory, SD 57533 (605) 835-8391

## DEFENDANTS
First National Bank

County of Residence of First Listed Defendant: Minnehaha County, SD
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District (specify)
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC § 2000e et seq. (Title VII); 42 U.S.C.§1201 et seq. (ADA); and 29 U.S.C. § 621 et seq. (ADEA)
Brief description of cause:
Discrimination/retaliation in employment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** $75,000+
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

**DATE** 10/07/2022
**SIGNATURE OF ATTORNEY OF RECORD** [signature]

**FOR OFFICE USE ONLY**
RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____